## KENNEY et al. v. BLAKE.

### (Circuit Court of Appeals, Ninth Circuit. September 14, 1903.)

### No. 908.

1. SEAMEN—STATUTE REGULATING CONTRACTS—CONSTRUCTION AND SCOPE.

The provision of section 24, Act Dec. 21, 1898 (30 Stat. 763, c. 28 [U. S. Comp. St. 1901, p. 3080]), entitled "An act to amend the laws relating to American seamen for the protection of such seamen and to promote commerce," which expressly makes its requirements as to the shipping of seamen applicable "as well to foreign vessels as to vessels of the United States," provided there is no treaty which conflicts, is within the power of Congress, and is valid and effective; and the requirements of the act apply to contracts made by seamen in ports of the United States for service on foreign vessels.

2. SAME—INVALIDITY OF CONTRACT—VIOLATION OF STATUTE.

Under Rev. St. § 4523 [U. S. Comp. St. 1901, p. 3075], which provides that "all shipments of seamen made contrary to the provisions of any act of Congress shall be void; and any seaman so shipped may leave the service at any time,  *  *  *" a contract for service on a British ship made in an American port, by which the seaman was paid wages in advance, in violation of Act Dec. 21, 1898 (30 Stat. 755, 763, c. 28 [U. S.

---

¶ 2. See Seamen, vol. 43, Cent Dig. §§ 121, 122.

Comp. St. 1901, p. 3080]), is void, and the seaman may leave the service at any time, and recover full wages for the time served, without deduction on account of the advance.

**3. ADMIRALTY—REVIEW ON APPEAL—DENIAL OF REHEARING.**

The denial of a motion by respondent for a rehearing in an admiralty suit, to permit the introduction of new evidence, is not ground for reversal of the decree, where respondent did not support his motion with a showing of what the evidence would be, nor present it to the appellate court, as might have been done under the admiralty rules.

Appeal from the District Court of the United States for the Western Division of the District of Washington.

For opinion below, see 117 Fed. 557.

The libelant, Michael Blake, an American citizen, brought this suit in the District Court for the District of Washington against the British ship Troop, her tackle, apparel, and furniture, to recover the sum of $198, alleged to be due the libelant as wages. It was alleged in the libel "that on the 15th day of July, 1901, at Philadelphia, state of Pennsylvania, libelant was duly hired by the said A. F. Kenney, the master of said vessel, as second mate on board of her, at the agreed compensation of thirty dollars per month, and that in pursuance thereof libelant duly entered in the services of said vessel, then and there, in the capacity as second mate on board of her, and duly performed all of his duties as such second mate on board of her until the 10th day of March, 1902, when libelant, with the consent of said master, left said vessel." The appellant A. F. Kenney appeared and claimed the vessel, and in his answer alleged that at the time the libelant joined the vessel he signed the usual and customary shipping articles, a copy of which articles were attached to the answer, marked "Exhibit A," and made a part thereof. The shipping articles described the voyage as "from Philadelphia to Fusan, China, thence if required to any port or places within the limits of 75 degrees north and 65 degrees south latitude, trading three years' voyage to end on the arrival of the vessel at a port of discharge on the east coast of the United States north of Hatteras, United Kingdom, or the continent of Europe between the Elbe and Brest, with liberty to call for orders." It appears that the articles contained the following entry respecting the libelant: "Michael Blake, age 45; nationality, Mass., Fall River; home address, Fall River, Massachusetts, U. S. A.; ship in which he last served, 'Lynfield;' date and place of signing this agreement, Philadelphia, sixteenth day, seventh month, 1901; capacity, second mate; amount of wages per calendar month, $30; amount of advance or monthly allotment, $30, one month's payment." The payment of the advance of $30 to the libelant appears upon the articles as follows: "Michael Blake, Mass., Fall River, Mass., U. S. A. Philadelphia, 2 mate $30. One payment, $30." The answer of the claimant alleged that libelant left the vessel without any good cause or reason therefor, and without the consent of the master and contrary to his wishes; that by reason of the libelant's having so left the vessel, he forfeited whatever wages may have been coming to him at the time he left the vessel. In the course of the testimony in the case the libelant, on cross-examination, was interrogated by proctor for claimant concerning certain deductions from his wages made by the master of the vessel. Among other things he was asked, "Didn't you get an advance of $30?" His answer was, "Yes, sir." The decree of the court below was in favor of the libelant for the sum of $193. The claimant of the vessel and the sureties on the bond for the release of the vessel have appealed.

J. M. Ashton and W. L. Sachse, for appellants.

A. W. Buddress, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). The act of Congress entitled "An act to amend the laws relating to Ameri-

can seamen, for the protection of such seamen and to promote commerce," passed December 21, 1898 (30 Stat. 755, 763, c. 28), provides, in section 24 [U. S. Comp. St. 1901, p. 3080], as follows:

"That it shall be, and is hereby, made unlawful in any case to pay any seaman wages in advance of the time when he has actually earned the same, or to pay such advance wages to any other person. Any person paying such advance wages shall be deemed guilty of a misdemeanor, and upon conviction shall be punished by a fine not less than four times the amount of the wages so advanced, and may also be imprisoned for a period not exceeding six months, at the discretion of the court. The payment of such advance wages shall in no case, excepting as herein provided, absolve the vessel or the master or the owner thereof from full payment of wages after the same shall have been actually earned, and shall be no defense to a libel, suit, or action for the recovery of such wages. * * * That it shall be lawful for any seaman engaged in a vessel bound from a port on the Atlantic to a port on the Pacific or vice versa, or in a vessel engaged in foreign trade, except trade between the United States and the Dominion of Canada or Newfoundland or the West Indies or the Republic of Mexico, to stipulate in his shipping agreement for an allotment of an amount, to be fixed by regulation of the commissioner of navigation, with the approval of the Secretary of the Treasury, not exceeding one month's wages, to an original creditor in liquidation of any just debt for board or clothing which he may have contracted prior to engagement. * * * That this section shall apply as well to foreign vessels as to vessels of the United States; and any master, owner, consignee or agent of any foreign vessel who has violated its provisions, shall be liable to the same penalty that the master, owner, or agent of a vessel of the United States would be for a similar violation: provided, that treaties in force between the United States and foreign nations do not conflict."

The court below held, under this statute, that the contract under which the libelant shipped on board the vessel was void, by reason of the payment of advance wages to the libelant; that he had the right to leave the vessel at any time, and was entitled to a decree for the full amount of wages earned, without deduction of the amount paid in advance; that other payments made to him, and the fines and subtraction of wages for the days when he was off duty without leave previous to the arrival of the ship at Tacoma, as shown by the ship's log, amounting to the total sum of $41, should be deducted. A decree was accordingly entered in favor of the libelant for the sum of $193, with interest and costs. 117 Fed. 557.

The identical question involved in this case was before the Supreme Court of the United States in the recent case of Patterson v. The Eudora, 190 U. S. 169, 23 Sup. Ct. 821, 47 L. Ed. 1002. It was there held that the act of December 21, 1898, was applicable to seamen shipping in a port of the United States on a foreign vessel, and that the statute was valid. On the authority of that case, the decree of the court below, holding the contract void, must be affirmed.

After the District Court had rendered its decision in favor of the libelant, proctors for claimant moved the court for a rehearing, upon the statement that claimant was taken by surprise in the argument made by proctor for libelant that the contract under which libelant joined the vessel was void on account of the advance payment. It was further stated that the libel presented no issue upon that question, and that, had such an issue been presented, claimant would have produced the allotment note, showing that such an advance was in payment of an original creditor of libelant in liquidation of a just debt

for board or clothing, which libelant had contracted to pay prior to signing the articles when joining the ship. There was also a motion to take testimony in support of the latter statement, but there is nothing in the record to show that the court would have been justified in granting either of these motions. It is unnecessary to discuss the grounds for a rehearing based upon the surprise occasioned by the argument of proctor for libelant on the trial of the case that the contract was void. The fact appears·to be that the case was tried in the court below on behalf of the claimant upon the theory that the rights and obligations of the parties under the contract were governed by the provisions of the British merchants shipping act of 1894, and not by the act of Congress of 1898, and this theory has been very strongly urged upon this court by appellant. But as before stated, the Supreme Court has disposed of this question in the Eudora Case, and it is therefore not open to further discussion.

The claim that the libel did not present the issue of a void contract on account of the payment of advance wages cannot be sustained. The libel clearly foreshadowed that issue when it departed from the usual form of libel for wages, and omitted all reference to the signing of shipping articles by the libelant. The claim that, had such an issue been presented, it would have been met by showing that the allotment was an advance under the provisions of the act of Congress, should have been supported by an affidavit showing what the testimony would have been in that behalf. The claimant having omitted to make that showing in the court below, it was still open to him to bring this testimony to the attention of this court, under the admiralty rules relating to new testimony in the appellate court. Having omitted these opportunities to present his defense, he cannot now urge them as a ground for reversing the decree of the District Court. Besides, no exception appears to have been taken to the rulings of the court in this respect, and no proper foundation laid for the review of the action of the court on appeal.

The decree of the District Court is affirmed.