**THE MABEL.**

**WORKMAN et al. v. LEWIS et al.**

**STEELE v. SAME.**

**LEWIS et al. v. WORKMAN et al.**

**No. 6683.**

Circuit Court of Appeals, Ninth Circuit.

Nov. 3, 1932.

Walter E. Hettman, of San Francisco, Cal., for appellants Workman and Baumgarten.

Walter E. Hettman and Edward F. Treadwell, both of San Francisco, Cal., for appellant Steele.

H. W. Hutton, of San Francisco, Cal., for appellees.

Before WILBUR and SAWTELLE, Circuit Judges.

SAWTELLE, Circuit Judge.

This is an appeal by A. L. Workman and Ralph F. Baumgarten, libelants of the fishing boat Mabel, and by one W. F. Steele, brought in by third party process. The claimants, as cross-libelants and cross-appellants, have filed assignments of error alleging that the trial court erred in certain rulings to their prejudice.

The libelants alleged in their libel:

"That the respondent vessel 'Mabel' is a gas screw or an oil boat about sixty-two feet long and about fifteen foot beam, is of wooden construction and is equipped with a Diesel engine.

"That on or about the 9th and/or 10th day of November, 1929, Ralph F. Baumgarten discovered the 'Mabel' upon the rocks off the coast of California near the town of Pescadero, County of San Mateo, State of California, in a disabled condition, abandoned by her crew, and in imminent danger of complete destruction by the breakers, wind, and tide, and totally and wholly abandoned and without any person or persons on board.

"That thereafter, and on or about the 10th day of November, 1929, libelant Ralph F. Baumgarten, at great risk to his own safety and under difficulties, made a line fast from the said 'Mabel' to the shore for the purpose of affording a means of carrying tackle and other valuable equipment of the 'Mabel' ashore and for the further purpose of expediting the running of other lines and cables from the land to the 'Mabel'; that because of the position of the 'Mabel' it was impossible to free her and save her whole and intact; that thereafter, by use of lines, cables, tractors, and other shore equipment and assisted by men employed by them for the purpose, libelant, A. L. Workman, and Ralph F. Baumgarten, succeeded in bringing ashore and saving the engines, machinery, tanks, mast, and other equipment of the said 'Mabel' which would otherwise have been a complete loss.

"That the libelant believes, and therefore alleges, that the said service was a valuable service for which the libelant and Ralph F. Baumgarten are entitled to the sum of Two Thousand Dollars ($2,000.00), or thereabouts; that if it had not been for said service, the gas screw boat 'Mabel' and her engines, tackle, apparel and furniture would have been a total loss. That libelant does not know the value of the 'Mabel', but when so informed will beg leave to amend his libel, if he be so advised."

The libel concludes with the usual prayer for relief.

Respondents, appellees here, denied the allegations of the libel and filed a cross-libel against the libelants and W. F. Steele, alleging the wrongful conversion of the vessel and its equipment by them, and praying judgment for the value thereof. The trial court found against the appellants and entered judgment against each and all of them on the cross-libel for the sum of $5,000. That court found, among other things, that:

"It is not true that on or about the 9th and 10th days of November, 1929, or at any other time or at all, Ralph F. Baumgarten discovered the 'Mabel' upon the rocks off the coast of California, near the town of Pescadero, County of San Mateo, State of California, abandoned by her crew and/or in imminent danger of complete destruction by the breakers, wind, and tide, or totally or wholly abandoned; it is true that said vessel had no one on board for a portion of the 10th day of November, 1929, but it is not true that said vessel was ever at any time either totally, actually or constructively abandoned.

"It is not true that on or about the 10th day of November, 1929, libelant Ralph Baumgarten, at great or any risk to his own safety or under any unusual difficulties made a line fast from the said 'Mabel' to the shore for the purpose of affording a means of carrying tackle and/or other valuable equipment of the 'Mabel' ashore and/or for the further purpose of expediting the running of other or any lines, cables or anything else from the land to the said 'Mabel' nor is it true that be-

cause of the position of said 'Mabel' it was impossible to free her and save her whole or intact. It is true that on the 10th day of November, 1929, one Thomas P. Dobson who had taken charge of said vessel 'Mabel' on behalf of The Globe and Rutgers Insurance Company, who carried insurance on said vessel and who took possession of said vessel on said day made an agreement with cross-libelee W. F. Steele to run a line from the shore to said 'Mabel' to keep her from drifting off the beach where she was stranded, and that libelant Ralph F. Baumgarten who was present and took part in said agreement run the line so agreed upon; it is true that after running said line and on or about the 12th day of November, 1929, libelants A. L. Workman and Ralph F. Baumgarten with other assistance and the assistance of cross-libellee W. F. Steele without any authority of any person trespassed upon and took possession of said vessel 'Mabel' and thereafter destroyed her hull and hauled certain parts of said vessel's equipment to the shore, but it is not true that whatever they did haul to the shore or any thereof would have been a complete or any loss without their or any of their efforts.

"It is not true that any claimed service alleged in Paragraph V of the amended libel herein was a valuable service, or of the value of $2,000.00 or any sum whatever, or that either of said libelants are entitled to $2,000.00, or any sum whatever for any service whatever alleged in libelants' amended libel, and it is not true if it had not been for the alleged service of said libelants, the gas screw vessel boat 'Mabel' and her engines, tackle, apparel and/or furniture or any thereof would have been a total loss or that any loss would have been sustained to any thereof.

"It is not true that at the time of the filing of said amended libel libelants did not know the names of the owners, the respondents herein or the claimants and owner of what had been and what was left of said vessel 'Mabel' they having been apprised of the names of the claimants herein by the filing of a claim and the giving of a cost bond herein by A. E. Lewis and Kathryn B. Madden on the 18th day of November, 1929.

"It is true that the vessel 'Mabel' which was what is called an oil boat went on shore at about the place designated in the said amended libel at about midnight of the night of November 9th, 1929, and that the master who was the owner thereof and crew left her but subsequently returned to her, and that the owner of said vessel notified the Globe and Rutgers Insurance Company of the stranding of said vessel and transferred the whole thereof with the appurtenances to that concern on the 13th day of November, 1929, and that on the same day the said concern transferred the whole thereof to claimants and cross-libelants; that on the said 10th day of November, 1929, the said Insurance Company dispatched one T. P. Dobson, as its agent to said vessel and he arrived thereat at about 10 A. M. in the forenoon of the 10th day of November, 1929, and he thereupon made an agreement with cross-libelee W. F. Steele to run a line from the shore to said vessel 'Mabel' to prevent her from drifting off the shore and that libelant Ralph F. Baumgarten was present at the time and under directions of said W. F. Steele did said work for which they were fully paid; that thereupon the said insurance company by and through said T. P. Dobson left the said vessel in care of said W. F. Steele with instructions to do nothing further relating to her unless authorized by one J. H. Madden, and who was an agent of the claimants and cross-libelants herein in all matters relating to said vessel; that said claimants and cross-libelants became the owners of said vessel 'Mabel' and all her appurtenances, and tackle, apparel and furniture and boats and sails on the 13th day of November, 1929, and on that day dispatched a force of men and the necessary equipment to the place where said vessel had gone ashore to float said vessel, which they could have done and saved the whole thereof, but upon their arrival where said vessel was cross-libelee and libelants who had without any authority from any one taken possession of said 'Mabel,' her engines, machinery, tackle, apparel and furniture, and refused to allow claimants and cross-libelants by and through their said force of men and with their said equipment or either thereof or at all to do any work on said vessel or on her said equipment and they thereupon without any authority having taken possession of said vessel, proceeded to and did retain possession of the whole thereof and converted the same to their own use, and cut and chopped the hull of said vessel to pieces and totally destroyed the same and took the tackle, furniture, machinery and all the appurtenances from said vessel and scattered the same around in different places and moved the same away from where the said vessel had been and thereby caused damage to the claimants and cross-libelants in the sum of Nine Thousand Dollars ($9,000.00) that being the reasonable value of the whole of said property at said time, Four Thousand Dollars

540

($4,000.00) in value of which said equipment was subsequently recovered by said claimants and cross-libelants, but neither the whole nor any part of the remaining sum of Five Thousand Dollars ($5,000.00) has been paid; that the said conversion of said property and the acts of said W. F. Steele and the said A. L. Workman and Ralph F. Baumgarten were unauthorized; that none of said property was their property, and the claimed salvage service mentioned in the amended libel herein were done without the will and consent of claimants and cross-libelants and each thereof or anyone else, and that libelants forfeited any claim for salvage if any they ever had by reason of their conduct aforesaid.

"That said cross-libelants purchased from the owners of said 'Mabel' all of their right, title and interest as she then lay upon the rocks on the 13th day of November, 1929, for the sum of Two Hundred and Fifty ($250.00) Dollars."

In the case of The San Rafael, 141 F. 270, 275, Judge Ross, speaking for this court, said: "It is well settled, said the Supreme Court in Irvine v. The Hesper, 122 U. S. 256, 266, 7 S. Ct. 1177, 30 L. Ed. 1175, 'that an appeal in admiralty from the District Court to the Circuit Court vacates altogether the decree of the District Court, and that the case is tried de novo in the Circuit Court. [Citing cases.]'"

Having this principle in mind, we have reviewed the evidence in its entirety and concluded that it supports and justifies the finding and conclusions of the trial court. The testimony, consisting of that of approximately seventeen witnesses, taken in open court, is highly conflicting; and even if we were inclined to differ with the learned trial judge who saw the witnesses, heard their testimony, and had opportunity of passing upon their credibility and accuracy, we would not be warranted in interfering with his findings of fact and conclusions, "unless the record discloses some plain error of fact, or unless there is a misapplication of some rule of law." Panama Mail S. S. Co. v. Vargas (C.

C. A.) 33 F.(2d) 894, 895; Id., 281 U. S. 670, 50 S. Ct. 448, 74 L. Ed. 1105; The Lake Monroe (C. C. A.) 271 F. 474.

In the case of Tomkins Cove Stone Co. v. Bleakley Transp. Co., 40 F.(2d) 249, 252, the Circuit Court of Appeals for the Third Circuit said: "Trying the case de novo from the printed record, our inclination is that the learned trial judge was right in holding the wharfinger free from negligence, but any lingering uncertainty in that regard must be resolved in favor of the fact finding of the trial judge (who saw and heard the witnesses) which will not be disturbed by an appellate court unless shown by the evidence to be clearly wrong. American Merchant Marine Ins. Co. v. Liberty S. & G. Co. (C. C. A.) 282 F. 514; Lewis v. Jones (C. C. A.) 27 F.(2d) 72; Swenson v. Snare & Triest Co. (C. C. A.) 160 F. 459."

In Merchants' & Miners' Transp. Co. v. Nova Scotia S. S. Corp., 40 F.(2d) 167, 168, the Circuit Court of Appeals for the First Circuit said: "His [the trial judge's] conclusions should be adopted by this court—in which an admiralty case is tried de novo—unless plainly wrong. Lake Monroe [(C. C. A.) 271 F. 474], supra; The Parthian (C. C.) 48 F. 564; The Alijandro (C. C. A.) 56 F. 621; Alaska Packers' Ass'n v. Domenico et al. (C. C. A.) 117 F. 99, 101."

We think it would serve no useful purpose to enter into a detailed discussion of the conflicting testimony. On the facts, as found by the trial court, and approved by this court, there is no question of appellants' liability. The most favorable construction to be placed upon appellants' conduct in taking possession of and converting the property to their own use is that they were laboring under a mistaken conception of their legal rights.

Appellants' petition for an order authorizing the taking of additional testimony is denied.

Appellees' claim that this court should increase the award in the sum of $1,134.55 is likewise denied.

The decree of the lower court is affirmed.